**United States District Court**
For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7               FOR THE NORTHERN DISTRICT OF CALIFORNIA

8
STEPHEN W. GREEL,                          No. 08-04474 CW

9          Petitioner,                      ORDER
                                            DENYING PETITION
10     v.                                   FOR WRIT OF
                                            HABEAS CORPUS
11 MICHAEL MARTEL, Warden,

12          Respondent.

13 ─────────────────────────────────────/

14

15                         INTRODUCTION

16      Petitioner Stephen W. Greel is a state prisoner incarcerated

17 at Mule Creek State Prison.  On September 24, 2008, he filed his

18 original pro se petition for a writ of habeas corpus pursuant to 28

19 U.S.C. § 2254 challenging a conviction and sentence imposed by the

20 Contra Costa County Superior Court.  Petitioner claims that there

21 was insufficient evidence to support his conviction for kidnapping

22 to commit rape, and that the introduction of certain evidence

23 inflamed the passions of the jury, thus depriving him of his

24 constitutional right to a fair trial.  On the same day, Petitioner

25 filed a motion for appointment of counsel, which the Court granted

26 on February 26, 2009.  On July 21, 2009, Respondent filed an

27 answer.  Petitioner, represented by counsel, timely filed a

28 traverse.  Having considered all of the papers filed by the

**United States District Court**
For the Northern District of California

1   parties, the Court DENIES the petition.

2                    PROCEDURAL BACKGROUND

3       On April 29, 2004, the district attorney filed an information

4   charging Petitioner with attempted murder (Count One; Cal. Penal

5   Code, §§ 187, 664);[1] kidnapping to commit rape (Count Two;

6   § 209(b)), assault with a firearm (Count Three; § 245(a)(2));

7   assault to commit rape (Count Four; § 220); and assault with a stun

8   gun (Count Five; § 244.5(b)).  The information also alleged

9   sentencing enhancements for inflicting great bodily injury within

10  the meaning of section 12022.7 as to Counts One and Three, and for

11  personal discharge of a firearm causing great bodily injury within

12  the meaning of section 12022.53(d), as to Counts One, Two, and

13  Four.

14      On August 2, 2005, a jury found Petitioner guilty on all

15  counts.  The jury also found the alleged sentencing enhancements

16  true, except for the firearm discharge as to Count Four, assault

17  with intent to rape.

18      On March 2, 2005, the trial court denied probation and imposed

19  an aggregate sentence of thirty-four years and eight months to

20  life.[2]  Petitioner timely appealed his convictions.  The California

21  court of appeal, in an unpublished opinion, reversed Petitioner's

22  conviction for assault with a stun gun for insufficiency of

23  _____

24      [1]All further statutory references are to the California Penal
    Code, unless otherwise noted.

25

26      [2]Both the parties contend the sentence was forty-one years to
    life, but the California court of appeal found the sentencing
    documents to support a thirty-four year and eight month sentence.
27  Resp's Ex. 2, at 4 fn. 3.

28                                 2

1  evidence, but otherwise affirmed the judgment.  Resp's Ex. 2;

2  People v. Greel, No. A111307 (Cal. App. April 25, 2007).

3  Petitioner filed a petition for review with the California Supreme

4  Court, which was summarily denied on July 11, 2007.

5                       FACTUAL BACKGROUND

6       The factual background of Petitioner's conviction is

7  summarized based on the court of appeal opinion, unless otherwise

8  stated.

9       On April 26, 2004, Petitioner, nineteen years old at the time,

10 picked up a woman who was hitchhiking.  When she tried to exit the

11 vehicle, Petitioner grabbed a stun gun and attempted to

12 incapacitate the woman with it.  The stun gun had no effect, and

13 the woman escaped from the car by jumping through the passenger-

14 side window, because the inside passenger-side door handle was

15 broken.  At the time, the vehicle was moving at about five miles

16 per hour, and had just crossed a bridge.  The woman sustained minor

17 injuries jumping from the car, but was able to stand up and run.

18 As the woman ran away, Petitioner shot eight rounds from a .22

19 caliber handgun at her from a distance of approximately twenty

20 feet.  One bullet hit the woman, causing serious injury.  As

21 Petitioner tried to throw the gun off the bridge, the barrel broke

22 off in his hand and fell to the ground, and the remainder of the

23 gun landed on a sand bar below.  Petitioner then fled the scene.

24      Later that day, after consulting with his mother, Petitioner

25 turned himself in at the Garberville sheriff's office.  Resp's Ex.

26 5, 1 Reporter's Transcript (RT) at 157.  A consensual search of

27 Petitioner's car revealed a stun gun behind the passenger seat, and

28                              3

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  a passenger-side door with no handle.  Resp's Ex. 5, 2 RT at 277.

2  Petitioner waived his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436

3  (1966).  He told Detective Dennis Young, who arrived at the station

4  to interview him, that he had picked up a hitchhiker, attempted to

5  use a stun gun on her, and shot her when she tried to escape.

6  Resp's Ex. 5, 1 RT at 250, 254-255.  Petitioner said he planned to

7  rape the woman but then he wavered after speaking with her about

8  her family.  Pet'r's Ex. A, at 20-21.  He said he was glad she had

9  gotten away because he probably would have raped her and maybe

10  would have even killed her.  Pet'r's Ex. A, at 31.

11      At trial, two types of evidence were introduced over

12  Petitioner's objections.  First, copies of two pornographic

13  stories, recovered from Petitioner's bedroom and apparently

14  downloaded from the internet and printed out, were introduced to

15  demonstrate Petitioner's intent to rape and kill the woman.  The

16  first story described the rape and murder of an eight-year-old

17  girl, and the second a son's rape of his mother.  The prosecutor

18  made reference to the stories at least five times in his closing

19  argument to the jurors, and urged them to examine the stories for

20  themselves.  Resp's Ex. 5, 2 RT at 431-432, 440, 446, 473-474.

21      The second type of evidence introduced over Petitioner's

22  objection was testimony from a sheriff's sergeant.  The sheriff's

23  sergeant testified that, when Petitioner was fifteen years old, she

24  investigated a complaint that he had molested his five-year-old

25  niece.  At that time, Petitioner admitted to engaging in sodomy,

26  oral copulation, fondling, and masturbation in front of the child.

27  Petitioner also admitted to having molested his niece in his

28                                      4

1  statement to Detective Young, which was played for the jury.

2  Resp's Ex. 5, 2 RT at 318.

3      In his closing argument to the jury, the prosecutor conceded

4  that Count Five, assault with a stun gun (§ 244.5(b)), was

5  unsupported by the evidence because it could not be shown that the

6  stun gun was capable of incapacitating a person, a required element

7  of the offense.  Resp's Ex. 5, RT at 430.  Accordingly, the

8  prosecutor urged the jury to convict instead on the lesser included

9  offense of assault (§ 240).  Resp's Ex. 5, RT at 479.

10                            DISCUSSION

11 I.   Standard of Review

12      Under the Antiterrorism and Effective Death Penalty Act

13 (AEDPA), a federal writ of habeas corpus may not be granted with

14 respect to any claim that was adjudicated on the merits in state

15 court unless the state court's adjudication of the claims:

16 "(1) resulted in a decision that was contrary to, or involved an

17 unreasonable application of, clearly established Federal law, as

18 determined by the Supreme Court of the United States; or

19 (2) resulted in a decision that was based on an unreasonable

20 determination of the facts in light of the evidence presented in

21 the state court proceeding."  28 U.S.C. § 2254(d).

22      "Under the 'contrary to' clause, a federal habeas court may

23 grant the writ if the state court arrives at a conclusion opposite

24 to that reached by [the Supreme] Court on a question of law or if

25 the state court decides a case differently than [the Supreme] Court

26 has on a set of materially indistinguishable facts."  William v.

27 Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable

28                                5

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1 application' clause, a federal habeas court may grant the writ if

2 the state court identifies the correct governing legal principle

3 from the [Supreme] Court's decision but unreasonably applies that

4 principle to the facts of the prisoner's case." <u>Id.</u> at 413.  The

5 only definitive source of clearly established federal law under 28

6 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the

7 time of the relevant state court decision.  <u>Id.</u> at 412.

8      If the state court considered only state law, the federal

9 court must ask whether state law, as explained by the state court,

10 is "contrary to" clearly established governing federal law.

11 <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1230  (9th Cir. 2001).  If the

12 state court, relying on state law, correctly identified the

13 governing federal legal rules, the federal court must ask whether

14 the state court applied them unreasonably to the facts. <u>Id.</u> at

15 1232.

16      If constitutional error is found, habeas relief is warranted

17 only if the error had a "'substantial and injurious effect or

18 influence in determining the jury's verdict.'"  <u>Penry v. Johnson</u>,

19 532 U.S. 782, 795 (2001)(quoting <u>Brecht v. Abrahamson</u>, 507 U.S.

20 619, 638 (1993)).

21      In determining whether the state court's decision is contrary

22 to, or involved an unreasonable application of, clearly established

23 federal law, a federal court looks to the decision of the highest

24 state court to address the merits of a petitioner's claim in a

25 reasoned decision.  <u>Lajoie v. Thompson</u>, 217 F.3d 663, 669 n.7 (9th

26 Cir. 2000).  Here, the highest state court to issue a reasoned

27 opinion is the California court of appeal.

28

**United States District Court**
For the Northern District of California

1  II.   Sufficiency of the Evidence of Kidnapping with Intent to Rape

2          Petitioner asserts that there is insufficient evidence to

3  support his conviction for kidnapping with intent to rape in

4  violation of section 209(b) because his forced movement of the

5  victim was merely incidental, and that his conviction thereby

6  violates his due process rights under the federal Constitution.

7          The Due Process Clause "protects the accused against

8  conviction except upon proof beyond a reasonable doubt of every

9  fact necessary to constitute the crime with which he is charged."

10  In re Winship, 397 U.S. 358, 364 (1970).  A state prisoner who

11  alleges that the evidence in support of his conviction cannot be

12  fairly characterized as sufficient to have led a rational trier of

13  fact to find guilt beyond a reasonable doubt therefore states a

14  constitutional claim, which, if proven, entitles him to federal

15  habeas relief.  See Jackson v. Virginia, 443 U.S. 307, 321-324

16  (1979).

17         The kidnapping with intent to commit rape statute, section

18  209(b), provides:

19

20         (1) Any person who kidnaps or carries away any
       individual to commit robbery, rape, spousal rape, oral
       copulation, sodomy, or any violation of Section 254.1,

21     288, or 289, shall be punished by imprisonment in the
       state prison for life with the possibility of parole.

22     (2) This subdivision shall only apply if the movement
       of the victim is beyond that merely incidental to the

23     commission of, and increases the risk of harm to the
       victim over and above that necessarily present in, the

24     intended underlying offense.

25  In determining whether a forced movement was merely incidental, the

26  jury must consider such factors as "whether the movement decreases

27  the likelihood of detection, increases the danger inherent in a

28                                  7

United States District Court
For the Northern District of California

1  victim's foreseeable attempts to escape, or enhances the attacker's

2  opportunity to commit additional crimes." People v. Dominguez, 39

3  Cal. 4th 1141, 1152 (2006).

4       In reviewing claims of insufficient evidence, California

5  courts use the Jackson standard. See People v. Cuevas, 12 Cal. 4th

6  252, 260-262 (1995); People v. Johnson, 26 Cal. 3d 557, 578 (1980).

7       In the California court of appeal, Petitioner argued that no

8  rational trier of fact could have found him guilty of kidnapping

9  with intent to rape because he moved the victim only a short

10 distance, several hundred feet across a bridge, before she escaped

11 from the car.  Therefore, he argued that the movement was merely

12 incidental to the intended rape, and did not either decrease the

13 risk of detection or increase the risk of harm to the victim.  The

14 court rejected this argument.  Resp's Ex 2 at 8-9.  It noted that

15 Petitioner could have raped his victim at any time; movement across

16 the bridge was not required, and thus a reasonable jury could have

17 concluded that the forced movement, while brief, was undertaken for

18 a non-incidental purpose.  Id. at 7.

19      Furthermore, the court acknowledged that there was no evidence

20 that there was a lesser risk of detection at the far end of the

21 bridge, where the forced movement ended, but noted that

22 "transporting a victim by car '[gives] rise to dangers, not

23 inherent in [an underlying crime], that an auto accident might

24 occur or that the victim might attempt to escape from the moving

25 car or be pushed therefrom . . ."  Id. at 8 (quoting In Re Earley,

26 14 Cal. 3d 122, 132 (1975)).  The court explained that the victim

27 did attempt to escape in this case, jumping from the moving

28                                    8

1  vehicle.  Id.  Although her injuries were slight, the court

2  reasoned that even at only five miles an hour, she could have

3  easily been seriously injured.  Id.  That she was not seriously

4  injured did not alter the fact that the forced movement created the

5  risk that she might have been.  Id.

6      Petitioner counters that jumping from a vehicle moving at five

7  miles an hour is no more dangerous than jumping from a stationary

8  location, and therefore that no reasonable person could convict him

9  of kidnapping with intent to rape based on his forced movement of

10 the victim.  The court of appeal's rejection of this argument is

11 not contrary to or an unreasonable application of Supreme Court

12 precedent.  A reasonable jury could have found that Petitioner's

13 forced movement of the victim, while not far in distance, was not

14 merely incidental because it substantially increased the risk of

15 injury to the victim.  Accordingly, habeas relief on this claim is

16 unwarranted.

17 III.  Admission of Prejudicial Evidence

18     Petitioner asserts that the introduction of pornographic

19 stories in his possession, and evidence of his prior sexual

20 misconduct, was so prejudicial as to render his trial fundamentally

21 unfair in violation of his federal due process rights.

22     The admission of evidence is not subject to federal habeas

23 review unless a specific constitutional guarantee is violated or

24 the error is of such magnitude that the result is a denial of the

25 fundamentally fair trial guaranteed by due process.  Henry v.

26 Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999).  The Supreme Court

27 "has not yet made a clear ruling that admission of irrelevant or

28

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  overtly prejudicial evidence constitutes a due process violation

2  sufficient to warrant issuance of the writ."   Holley v. Yarborough,

3  568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's

4  admission of irrelevant pornographic materials was "fundamentally

5  unfair" under Ninth Circuit precedent but not contrary to, or an

6  unreasonable application of, clearly established federal law).

7      Failure to comply with state rules of evidence is neither a

8  necessary nor a sufficient basis for granting federal habeas relief

9  on due process grounds.   Henry, 197 F.3d at 1031; Jammal v. Van de

10 Kamp, 926 F.2d 918, 919 (9th Cir. 1991).   The due process inquiry

11 in federal habeas review is whether the admission of evidence was

12 arbitrary or so prejudicial that it rendered the trial

13 fundamentally unfair.   Walters v. Maass, 45 F.3d 1355, 1357 (9th

14 Cir. 1995).   Only if there are no permissible inferences that the

15 jury may draw from the evidence can its admission violate due

16 process.   Jammal, 926 F.2d at 920.

17      A.   Pornographic Stories

18      Petitioner asserts that the trial court improperly weighed the

19 probative value and prejudicial effect of the violent pornographic

20 stories in Petitioner's possession that it admitted into evidence

21 to show intent to kill and rape the victim.

22      The court of appeal held that the stories were properly

23 admitted, because they were relevant and the likely prejudicial

24 effect of their admission was "not great."   Resp's Ex. 2, at 11.

25 The court noted that, although the stories themselves were shocking

26 and disturbing, there was "no contention that the defendant was the

27 author of the stories and was responsible for their content," and

28
                                    10

**United States District Court**
For the Northern District of California

1  thus the jury was unlikely to be unduly prejudiced by viewing them.

2  Id.  On that basis, the court held that the trial court's admission

3  of the stories was not an abuse of discretion.  Id.  The court also

4  noted that, even if the stories were improperly admitted, the error

5  would have been harmless, given the extensive evidence of

6  Petitioner's guilt: he confessed to the crime to both his mother

7  and the police, his account matched that of the victim, and

8  physical evidence recovered from the scene was consistent with

9  Petitioner's confession.  Id.

10      Because there is no clear Supreme Court precedent holding that

11  admission of prejudicial and irrelevant evidence can be an

12  appropriate basis for habeas relief, Petitioner would not be

13  entitled to habeas relief on this ground even if he could show that

14  admission of the stories unfairly biased the jury against him.  See

15  Holley v. Yarborough,568 F.3d 1091 at 1101 (holding that even

16  though admission of irrelevant prejudicial evidence was grounds for

17  reversal of petitioner's conviction under Ninth Circuit case law,

18  the lack of clear Supreme Court precedent meant that habeas relief

19  was inappropriate on that ground).

20      Furthermore, even under the Ninth Circuit's Jammal standard,

21  the state court was not unreasonable in finding that admission of

22  the stories did not render Petitioner's trial fundamentally unfair.

23  The evidence was introduced for the purpose of corroborating

24  Petitioner's self-admitted fantasies about killing and raping a

25  woman and to show his intent to act on those fantasies.  See

26  Pet'r's Ex. A, 20-21, 31.  Although the evidence arguably had

27  little probative value because of Petitioner's own admissions to

28

**United States District Court**
For the Northern District of California

1 the same effect, it was offered to counter the defense's suggestion

2 at trial that Petitioner's admissions had been bravado on the part

3 of a person with low self-esteem, and that there was no sexual

4 element to the crimes committed.  Resp's Ex 5, 1 RT 129, 2 RT 459.

5 The jury could have permissibly inferred from this evidence that

6 Petitioner's admissions were not simply bravado and that his

7 interest in raping and killing a woman was real.  The state court

8 was not unreasonable in finding that, because there was a

9 legitimate inference the jury could have drawn from the evidence,

10 its introduction did not result in a fundamentally unfair trial.

11 See Jammal, 926 F.2d at 920.  Therefore, the court of appeal's

12 determination was not contrary to or an unreasonable application of

13 Supreme Court precedent, and Petitioner is not entitled to habeas

14 relief on this ground.

15 　　　　B.   Evidence of Petitioner's Past Sexual Misconduct

16 　　　　Petitioner argues that introduction of evidence that he had

17 molested his five year old niece four years prior to the charged

18 conduct was also so prejudicial as to render his trial

19 fundamentally unfair.

20 　　　　In general, character evidence, including specific instances

21 of past conduct, is inadmissible under California law when

22 introduced to show a criminal defendant acted in conformity with

23 his or her character.  See Cal. Evid. Code. § 1101.  In the case of

24 prosecutions for sexual crimes, however, California Evidence Code

25 section 1108 removes this prohibition in regard to evidence of

26 other sex offenses committed by the defendant.  Cal. Evid. Code.

27 § 1108.  Accordingly, admission of this sort of evidence is limited

28

1  only by California Evidence Code section 352's balancing test,

2  which weighs probative value against prejudicial effect.  Cal.

3  Evid. Code. § 352; see People v. Falsetta, 21 Cal. 4th 903, 916

4  (1999) (holding that, in the case of evidence of prior sexual

5  conduct, in deciding whether to admit the evidence the trial court

6  must weigh such factors as the nature, relevance, degree of

7  certainty and remoteness of the offense, the likelihood of

8  confusing or distracting the jury, the likely prejudicial effect,

9  and the possibility of less prejudicial alternatives).

10       The court of appeal held that the introduction of evidence of

11  Petitioner's past sexual misconduct presented "a close call" under

12  California Evidence Code section 352, but it did not find the

13  admission an abuse of discretion.  Resp's Ex. 2, at 13.  The court

14  also held that, even if the evidence was improperly admitted, any

15  error was harmless, given the strength of the case against

16  Petitioner.  Id.

17       As mentioned above, the lack of clear Supreme Court precedent

18  on this issue forecloses relief to Petitioner even if the admission

19  did render his trial fundamentally unfair under Ninth Circuit

20  precedent.  See Holley, 568 F.3d at 1101.

21       Pursuant to Federal Rules of Evidence 413, 414, and 415,

22  evidence of prior sexual misconduct is explicitly recognized as

23  admissible in sex offense cases, subject to considerations of

24  prejudice and probative value.  United States v. LeMay, 260 F.3d

25  1018, 1026-27 (9th Cir. 2001).  Admission of such evidence in

26  federal court is subject to the balancing test of Federal Rule of

27  Evidence 403, but the rule recognizes that there is legitimate

28

13

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1 probative value to be balanced against prejudicial effect.

2 The court of appeal was not unreasonable in finding that the

3 probative value of the evidence outweighed its prejudicial effect,

4 and that any error was harmless because the case against Petitioner

5 was strong.  Even if the court did err, the strong evidence

6 presented by the prosecution, including the matching confession,

7 testimony of the victim and physical evidence, ensured that the

8 evidence of sexual misconduct had no "substantial and injurious

9 effect or influence in determining the jury's verdict."  See

10 Brecht, 507 U.S. at 638.  The California court of appeal's

11 rejection of Petitioner's arguments was not contrary to or an

12 unreasonable application of Supreme Court authority, and he is not

13 entitled to habeas relief on this ground.

14                              CONCLUSION

15     For the foregoing reasons, the petition for a writ of habeas

16 corpus is DENIED.  The Court will issue a certificate of

17 appealability for this case should Petitioner wish to pursue an

18 appeal.  See Rule 11(a) of the Rules Governing § 2254 Cases, 28

19 U.S.C. foll. § 2254 (requiring district court to rule on

20 certificate of appealability in same order that denies petition).

21 A certificate of appealability should be granted "only if the

22 applicant has made a substantial showing of the denial of a

23 constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate of

24 appealability must indicate which issue or issues satisfy the

25 showing required by § 2253(c)(2).  28 U.S.C. § 2253(c)(3).  The

26 Court finds that Petitioner has made a sufficient showing of the

27 denial of a constitutional right on his claims based on the

28

                                   14

admission of prejudicial evidence.  Petitioner has not made a

showing sufficient to justify a certificate of appealability on his

claim based on the insufficiency of the evidence supporting his

kidnapping conviction.  The Clerk of the Court shall enter

judgment, terminate all pending motions, and close the file.


     IT IS SO ORDERED.


Dated: July 23, 2010

_____
CLAUDIA WILKEN
United States District Judge